NOT FOR PUBLICATION

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

———————————————————— :

AV DESIGN SERVICES, LLC.,      :

                                 :

           Plaintiff,      :

                                 :       Civil No. 19-8688 (RBK/KMW)

           v.          :

                                 :       **OPINION**

JAMES M. DURANT, et al      :

                                 :

           Defendants.      :

———————————————————— :

**KUGLER**, United States District Judge:

Presently before the Court is Plaintiffs' Motion to Dismiss the Amended Counterclaims (Doc. No. 52) and Defendants' Motion for Partial Summary Judgment (Doc. No. 64). For the reasons set forth below, Plaintiffs' Motion is **GRANTED** in part, and Defendant's Motion is **DENIED**.

## I.    BACKGROUND

This case turns on whether a former employee of a limited liability company was admitted as a member within the terms of the operating agreement and his equity purchase option in his employment contract.

### A.  Factual Background[1]

Plaintiff AV Design Services, LLC—formed under the laws of New Jersey in 2012— provides commercial audio-visual services to companies like ESPN and UNIVISION. (Doc. No.

---

[1] In ruling on Plaintiffs' motion to dismiss the counterclaims, we rely on the Complaint, the well pleaded facts set forth in Defendant's Counterclaims, and the exhibits attached to the counterclaim which the parties have requested that we consider for purposes of this motion.

1, Compl. at ¶ 8). Its founding members were Plaintiff James Landy and Plaintiff Rossen Karadjov, along with James Grimes, who is not a party to this litigation. (*Id.*).

As with most LLCs, AV Design Services is subject to a written operating agreement which sets forth certain relevant provisions that govern its internal affairs. (Doc. No. 52-2, Exhibit B). Specifically, Section 16(b)(1) and (11) of operating agreement provides in pertinent part, "the Manager shall not without receiving the unanimous vote of the members . . .  issue additional Memberships Interest . . .  [or] enter into agreements with, and fix and adjust the compensation of, employees of the Company." (Doc. No. 52-2, Exhibit B at 74). The operating agreement provided that Plaintiff Landy was the "Manager." (*Id.* at 67). Section 17(a) likewise restricted members actions by stating that "Membership Interests may not be transferred or assigned without the unanimous consent of the Members." (*Id.* at 76). Lastly, Section 17(c) of the operating agreement, entitled "Admission of Additional Members," also provided that "[a]dditional Members shall only be admitted upon the unanimous consent of the Members." (*Id.* at 77).

In June of 2015, Defendant James Durant entered into a two-year Employment Agreement with AV Design Services. (Doc. No. 46, CC at ¶¶ 1–2). He was to act as Director of Sales for AV Design Services and would receive a base salary of $120,000 plus a commission of 15% on the net profit of each project he obtained or acquired. (*Id.* at ¶ 2). The Employment Agreement provided Durant with an option to purchase equity in AV Design Services. (Doc. No. 1, Compl. at ¶ 11); (Doc. No. 46, CC at ¶ 7). The option gave Durant the ability "to purchase twenty-five (25%) percent of the equity ownership of the Company during the Term of his employment with the Company" for five hundred and seven thousand five hundred dollars ($507,500.00). (Doc. No. 46, Exhibit A at ¶ 6). To purchase this option, Durant could elect to

have the company pay his commissions earned toward it or make a lump sum payment. (*Id.* at ¶ 6.1). The Employment Agreement informed Durant, however, that "[n]o interest or shares of the Company shall be deemed purchased, released or transferred until the entire purchase price for the Equity Option of $507,500.00 is paid in full" and that any funds paid toward the option constituted an asset of the company. (*Id.*).

Section 5.3 provided a synopsis of how Durant's equity ownership option would be funded:

> Synopsis:
> Compensation offer @ $120K salary plus benefits ... with the salary we offer a 15% "commission" on net profit for every new project brought into AVDS. (You will receive a 15% "commission" on NET profit for the project. AVDS will [take] 85% of the profit . . . [and] will place 50% of [that amount] . . . toward "buy in" ... once this is paid in FULL you become an equal equity stakeholder in AVDS LLC (25%)).
>
> *Example . . . $1M[] sale @ 20% is $200K . . . 15% commission is $30K which leaves $170K. . . 50% of $170K is $85K (which goes toward your buy in) $507,500.00.*
>
> I think this is very fair and will work ... you should be able to reach his $507, 500.00 with a multiple good projects . . . Equity should be satisfied after you contribute about $6M[] is projects . . . $6M[] @ 20% profit is $1.2M[] . . . after 15% commission ($180,000.00) yields $1,020,000.00 in profit so 50% of that is $510,000.00 . . .
>
> Your goal is $6M[] in sales to contribute enough credit to satisfy your buy in.

(*Id.* at ¶ 5.3). Paragraph 6 of the Employment Agreement further provided that if Durant was terminated, he resigned, or the term of his employment was not extended by him or the company, "the Equity Option shall be deemed automatically terminated without further action by the Company and all funds paid by [Durant] on account of the Equity Option shall be returned to [Durant] . . ." (*Id.* at ¶ 6.2).

If Durant was terminated without cause, the employment agreement provided:

the Company shall (i) continue to pay and otherwise provide to the Employee, during any notice period, all compensation, base salary and previously earned but unpaid incentive compensation, if any, and shall continue to allow the Employee to participate in any benefit plans in accordance with the terms of such plans during such notice period; and (ii) pay to the Employee, in lieu of benefits under any severance plan or policy of the Company, an amount equal to the sum of the Employee's twelve (12) months' base salary as in effect as of the Date of Termination.

(*Id.* at ¶ 7.7.2). However, if he was terminated for cause, he would not be entitled to any "severance, compensation or benefit from the Company except as specifically provided in Paragraph 6." (*Id.*, Exhibit A at ¶ 7.7.4)

In December of 2017—almost two years after Durant joined the company—Landy allegedly harassed Durant's wife at an annual company holiday party by touching her buttocks and calling her disparaging names. (Doc. No. 46, CC at ¶ 16). Durant reported this behavior to Plaintiff Karadjov and Grimes. (*Id.* at ¶ 17). About two months later, Durant's wife filed a criminal complaint against Landy in Mount Laurel Township Municipal Court for the alleged harassment and offensive touching. (*Id.* at ¶ 18). Thereafter, Landy, as the managing member of AV Design Services, allegedly began to retaliate against Durant by creating unnecessary work, paperwork, approvals and run-a-rounds. (*Id.* at ¶¶ 19–20). Eventually, Landy was removed as managing member and Durant no longer reported to him. (*Id.* at ¶ 21).

After almost four years with the company, Durant allegedly contributed enough money to complete the purchase of the $507,500 equity ownership option and was admitted as a member of AV Design Services. (*Id.* at ¶¶ 22–23). On January 24, Durant attended a member meeting where the members discussed Durant completing the buy-in, that they were waiting for him to complete the buy-in paperwork, and that the Operating Agreement needed to be updated. (*Id.* at Exhibit B). Four days later, at another members meeting, they discussed Durant's official start date as a member and changes to his compensation. (*Id.*). Two days later, Plaintiff Karadjov

4

confirmed that Durant's official start date as a member was January 1, 2019. (Doc. No. 46, CC at ¶ 26). On the last day in January, Landy sent a memo to the other members, entitled "Changes at AVDS," that listed AV Design Services as having four members. (*Id.* at ¶ 27).

Around the same time that Durant allegedly became a member, early 2019, he noticed some discrepancies in AV Design Services QuickBooks system. (*Id.* at ¶ 33). Several of the invoices for his clients were invoiced for the full contract amount when they should have been invoiced for 50% of that amount. (*Id.* at ¶ 34). He also noticed that for several of his other projects the invoices were manipulated to reflect completed projects when the projects were in fact incomplete. (*Id.* at ¶ 37). Some of his clients also received full invoice or duplicate invoices for projects that were incomplete. (*Id.* at ¶ 41). After informing Grimes of these issues, Durant was informed that Landy had failed to include payments or invoices for certain projects in the company's QuickBooks system. (*Id.* at ¶ 44). Although Durant questioned Landy about the missing invoices, he never received a response. (*Id.* at ¶ 45).

Shortly thereafter, on February 22, 2019, Landy sent an email stating that Durant was not a member of AV Design Services. (*Id.* at ¶ 47). Five days later, Grimes was terminated. (*Id.* at ¶ 48). Durant was then reassigned to report to Landy. (*Id.* at ¶ 50). Landy allegedly resumed his campaign to retaliate against Durant by assigning him impossible tasks, such as requiring him to issue reports regarding ongoing projects within 48 hours even though Durant's access to project files had been revoked. (*Id.* at ¶¶ 51–54).

On March 18, 2019, Durant was provided written notice of his termination for alleged breaches of his Employment Agreement. (*Id.* at ¶¶ 59–60). Three days later, Durant demanded payment of his post-termination commissions for completed projects pursuant to Section 7.7.4 of the Employment Agreement, return of the $507,500 he paid toward the equity ownership option

pursuant Section 6.2 of the Employment Agreement, and payment of his base salary under Section 7.7.2 of the Employment Agreement. (*Id.* at ¶¶ 65–67). AV Design Services refused to pay Durant any of the money requested. (*Id.* at ¶ 68).

### B.  Procedural History

On March 18, 2019, Plaintiffs filed a complaint against Defendant Durant seeking a declaratory judgment that Durant was not a member of AV Design Services, LLC, that he is not entitled to demand arbitration under the operating agreement, and was validly terminated for cause. (Doc. No. 1). On May 7, 2019, Defendant Durant answered and asserted thirteen counterclaims against Plaintiffs. (Doc. No. 5). The answer and counterclaims were subsequently amended. (Doc. No. 46). On June 15, 2020, Plaintiffs moved to dismiss the amended counterclaims. (Doc. No. 52). In response, Defendant moved for partial summary judgment. (Doc. No. 64). The motion for partial summary judgment and motion to dismiss the amended counterclaims are now ripe for review.

## II.    LEGAL STANDARD

### A.  Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a complaint survives a motion to dismiss if it contains enough factual matter, accepted as true, to

"state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To make this determination, courts conduct a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the Court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the Court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 680). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Iqbal*, 556 U.S. at 678). Finally, "when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679). A complaint cannot survive a motion to dismiss where a court can only infer that a claim is merely possible rather than plausible. *Id.*

## III.    DISCUSSION

### A.  Motion for Partial Summary Judgment

Defendant's motion for partial summary judgment is denied without prejudice because he has failed to comply with Rule 56.1(a). *Kee v. Camden Cty.*, No. CIV. 04-0842 (JBS), 2007 WL 1038828, at *4 (D.N.J. Mar. 30, 2007) (declaring that a moving party's failure to comply with Rule 56.1 is itself sufficient to deny its motion); *Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613 (3d Cir. 2018) (explaining the district court is in the best position to determine the extent of a party's noncompliance with Local Rule 56.1, as well as the appropriate sanction for such noncompliance). Local Rule 56.1(a) provides in pertinent part "[e]ach statement of material facts shall be a separate document (not part of a brief) and shall not contain legal argument or

conclusions of law." L. Civ. R. 56.1. Defendant's statement of material facts is incorporated in its brief. This clearly does not comply with the Local Rule. Moreover, Defendant includes improper legal arguments and conclusions in its statement of material facts. Therefore, Defendant's motion for partial summary judgment is denied without prejudice.

### B.  Documents Integral to the Complaint

Before even considering the parties arguments, we must resolve their requests to consider exhibits attached to the amended counterclaims and motion to dismiss. Federal Rule of Civil Procedure 12(b) specifically circumscribes material that a court may consider to dismiss by stating "if, on a motion asserting the defense number (6) to dismiss, . . . matters outside the pleading are presented and not excluded by the court, the motion shall be treated as one for summary judgment." As such, a court generally may not "consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). One exception to this general rule is when documents are integral to or explicitly relied upon in the complaint. *Id.*

Integral documents are defined as documents which create rights or duties that are the basis for the Complaint. *In re Merck Co., Inc., Sec., Derivative & "Erisa" Litig.*, No. CV 05-1151 (SRC), 2006 WL 8460903, at *2 (D.N.J. Jan. 20, 2006). Put differently, this exception encompasses situations where the Plaintiff's claim depends on the contents of a document. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). The quintessential example of this exception is a breach of contract action; in such cases, the contract would be considered integral and a defendant filing a motion to dismiss under 12(b)(6) would be permitted to attach the contract as an exhibit, which would then be considered for its truth by the court. *In re Merck Co., Inc., Sec., Derivative & "Erisa" Litig.*, No. CV 05-1151 (SRC), 2006 WL 8460903, at *2 (D.N.J.

Jan. 20, 2006). Likewise, it is permissible to consider those documents explicitly relied on by the plaintiff in drafting the complaint. Lastly, the Court may consider any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *PBGC v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir.1993).

Plaintiffs request that we consider the Amended Counterclaims, the Operating Agreement, and "the documents attached to the pleadings and the records of the case created in connection with the motion practice pending in this Court." Defendant does not request this Court to consider any documents, he merely attaches them to his Amended Counterclaim. In resolving the current motion to dismiss, the Court will consider Exhibits A through G that are attached to Defendant's Amended Counterclaims because they are explicitly relied on in drafting them. We will also consider the Operating Agreement, which is attached to Plaintiffs' motion to dismiss, because Defendant's claim that he is a member of the LLC depends on the contents of the Operating Agreement.

## C.  New Jersey Revised Uniform Limited Liability Company Act

### i.  Motion to Dismiss[2]

We first address what is perhaps the most vexing issue in this case—whether Defendant Durant was admitted as a member of AV Design Services. Plaintiffs set forth a list of reasons why Durant was not admitted as a member. First, Plaintiffs argue Durant has failed to allege a plausible claim that he was admitted as a member of AV Design Services because there is no allegation that he was admitted in compliance with the terms of the operating agreement or under the New Jersey statute governing limited liability companies. Second, the Employment

---

[2] Although not explicit in Defendant's motion, especially considering that he labels it as a "motion for partial summary judgment," his argument for summary judgment is also the argument against the motion to dismiss. This can be inferred from the fact that he filed the same brief for his response to Plaintiff's motion to dismiss and for his motion for partial summary judgment.

Agreement, which Durant contends constitutes unanimous consent to admit him as a member, could not divest Landy and Karadjov of their right to vote on Durant's admission. Nor is there any allegation that the members agreed to amend the operating agreement or to forgo the unanimity requirement. Likewise, Plaintiffs argue that there are no allegations beyond conclusory ones that Defendant met the sales goal which was necessary to complete the equity buy-in option. In fact, Plaintiffs argue that Exhibit D attached to the Amended Counterclaims actually shows that Durant did not meet the threshold amount to complete the buy in.

Defendant argues there was unanimous consent to admit him as a member after payment of the equity ownership option because Plaintiffs could not execute the Employment Agreement without unanimous consent.[3] That is, the Operating Agreement specifically provided the Manager, Landy, could not "enter into agreements with, and fix and adjust the compensation of, employees of the Company," until he received a unanimous vote from the Members. Therefore, Defendant argues that by virtue of executing the Employment Agreement, the members agreed to admit him as a member after payment of the equity ownership option. Defendant further contends that he properly exercised his option because he alleged in that "as of . . . January 1, 2019, [he] had contributed $507,500.00 [to] his Equity Option . . . pursuant to the Equity Buy-In Option in the Employment Agreement." (Doc. No. 46, CC at ¶ 22).

The staring point for this issue is New Jersey's Revised Uniform Limited Liability Company Act. N.J.S.A. § 42:2C-11(a) defines the scope of the operating agreement and provides:

---

[3] We considered Defendant's other arguments as to why Durant was admitted as a member of AV Design Services. But they put the cart before the horse. We cannot determine whether an email listing Durant as a member constitutes "consent" without first determining the meaning of "consent." Therefore, while it is possible that such actions could constitute consent, we focused more on Defendant's execution of the employment agreement argument which addresses this issue more directly.

> Except as provided in subsections b. and c. of this section, the operating agreement governs:
> (1) relations among the members as members and between the members and the limited liability company;
> (2) the rights and duties under this act of a person in the capacity of manager;
> (3) the activities of the company and the conduct of those activities; and
> (4) the means and conditions for amending the operating agreement.

N.J.S.A. § 42:2C-11(a). Subsection (b) states "[t]o the extent the operating agreement does not otherwise provide for a matter described in subsection a. of this section, this act governs the matter." Thus, we must look to the Operating Agreement to determine whether Durant was admitted as a member.

Here, the terms of the Operating Agreement mirror the Act with respect to admission of members after formation of the limited liability company—both require unanimous consent.[4] Specifically, Section 17(c) of AV Design Services' Operating Agreement provides "[a]dditional [m]embers shall only be admitted upon the unanimous consent of the Members." Conceptually, then, the first issue here is whether there was "unanimous consent." This is really a fact question, but Durant's argument transmutes it into a legal question—a question of contract interpretation.

Durant argues that there was unanimous consent because the Employment Agreement could not be entered into without a unanimous vote of the members. Implicitly, Durant's argument is premised on the assumption that a unanimous vote equates to unanimous consent.[5]

---

[4] Under Article Four, entitled "Relations of Members to Each Other and to Limited Liability Company," N.J.S.A. § 42:2C-31(c) explains how a person becomes a member of a limited liability company after formation:
> After formation of a limited liability company, a person becomes a member:
> (1) as provided in the operating agreement;
> (2) as the result of a transaction effective under Article 10 (sections 73 through 87 of this act);
> (3) with the consent of all the members; or
> (4) if, within 90 consecutive days after the company ceases to have any members:
>     (a) the last person to have been a member, or the legal representative of that person, designates a person to become a member; and
>     (b) the designated person consents to become a member

[5] It also assumes that by executing the Employment Agreement the members not only agreed to extend employment to Durant but also to admit him as a member of AV Design Services. As Plaintiff suggests, it is also possible that the

While the word "consent" is not defined in the Operating Agreement and it is clear that "consent" is supposed to have a different meaning from the word "vote," there is nothing in the Agreement that indicates a unanimous "vote" codified in an employment contract cannot constitute unanimous "consent." Indeed, this interpretation of the word "consent" accords with its plain meaning which is defined as "to give assent or approval." Merriam Webster's Online Dictionary, https://www.merriam-webster.com/dictionary/consent (last visited March 21, 2021). Therefore, we find that Durant's interpretation of the word "consent" under the Operating Agreement is reasonable. *Mercedes-Benz USA, LLC v. ATX Grp., Inc.*, No. CIV. 08-3529 (WHW), 2009 WL 2255727, at *8 (D.N.J. July 27, 2009) (noting dismissal of a breach of contract claim is appropriate only if the moving party's interpretation is the sole reasonable interpretation).[6]

Next, we must go back to the original question, whether there was unanimous consent, and determine whether Durant has alleged enough facts to show there was. Durant alleges that he entered into an employment agreement with AV Design Services on June 19, 2015 and that this agreement included an equity ownership option which allowed him to purchase a membership interest in AV Design Services. From these two allegations and the terms of Section 16(b) of the Operating Agreement, which Plaintiffs requested we consider for purposes of this motion, a reasonable inference is that there was unanimous consent to admit Durant as a member after payment of the equity option because the Employment Agreement could not be executed without

---

members agreed to grant Durant an equity option but reserve the right to vote on his admission until after payment of the option. But, because we must construe the counterclaims in the light most favorable to Defendant, this possibility is not enough to grant Plaintiffs' motion to dismiss.

[6] Conceptually, this issue is similar to a breach of contract claim because in both the Court must determine the terms of the contract and whether the terms are reasonable. Therefore, our determination that Defendant's interpretation of the word "consent" is reasonable does not foreclose other interpretations. It is possible that the Operating Agreement suggests a different meaning of "consent," but because Plaintiffs have not suggested any other interpretations, we need not reach this issue.

the unanimous vote of the members. Therefore, we find that Defendant has plausibly alleged

there was unanimous consent to admit him as a member of AV Design Services after payment of

the equity option.

This is not the end of the matter, however, because Defendant's theory hinges on him

completing the purchase of the equity ownership option. Thus, we must now consider the terms

of the Equity Ownership Option in the Employment Agreement and whether Durant has

sufficiently alleged facts to show compliance with those terms.

Plaintiffs argue that Durant failed to satisfy the terms of the Equity Ownership Option

because he did not pay the $507,500 within the initial two-year term, he did not generate enough

new business to meet this threshold amount because he included projects referred to him by

Landy as part of his profits, and Durant's own self-reported contributions were inaccurate as they

failed to include material expenses. Defendant argues that the Equity Ownership Option does not

require him to pay the $507,5000 within the initial two-year term nor does it exclude projects

referred by Landy. Likewise, Defendant points out that there were no strings attached to the

Equity Ownership Option beyond paying the $507,5000 because it specifically stated "AVDS

will [take] 85% of the profit . . . [and] will place 50% of [that amount] . . . toward [the] 'buy in' .

. . *once this is paid in FULL you become an equal equity stakeholder in AVDS LLC*." The parties

dispute over the terms of the Equity Ownership Option are questions of contract interpretation

which both have failed to properly analyze or brief.

To resolve these competing interpretations the Court must first determine whether the

terms of the Equity Ownership Option are clear or ambiguous. A determination of ambiguity is a

question of law. *See Teamsters Industrial Emp. Welfare Fund v. Rolls–Royce Motor Cars, Inc*.,

989 F.2d 132, 135 n.2 (3d Cir.1993). Ambiguity exists "if the terms of the contract are

susceptible to at least two reasonable alternative interpretations." *Assisted Living of Moorestown,*

*L.L.P. v. Moorestown Twp.*, 31 F.Supp.2d 389, 398 (D.N.J.1998) (citation omitted). If this Court

were to determine that the terms are ambiguous, then its precise meaning would be a question for

the fact-finder to answer. *See Pittston Co. Ultramar America Ltd. v. Allianz Ins. Co.*, 124 F.3d

508, 523 (3d Cir.1997).

      At this stage of the proceedings, absent any evidence of the parties' intentions or other

extrinsic evidence, "it is simply too early to determine whose interpretation of the relevant

provision is correct or even whether the provision is sufficiently ambiguous to warrant referral to

the fact-finder." *Biovail Corp. Int'l v. Hoechst Aktiengesellschaft*, 49 F.Supp.2d 750, 775

(D.N.J.1999). This is not a case where the "plain meaning of a contract phrase ... spring[s]

unambiguously from the page." *RCI Northeast Servs. Div. v. Boston Edison Co.*, 822 F.2d 199,

202 (1st Cir.1987). The Court will be in a better position to determine and resolve any issue of

ambiguity in the Equity Ownership Option once discovery has occurred in this case. For now,

construing all facts in favor of Defendant, we find he has sufficiently pled that he was admitted

as a member of AV Design Services because he alleged "[a]s of . . . January 1, 2019, [he]

contributed $507,5000 on account of his Equity Option to AVDS" and therefore "joined AVDS

as a 25% member by virtue of his completion of the buy-in agreement." *Mercedes-Benz USA,*

*LLC v. ATX Grp., Inc.*, No. CIV. 08-3529 (WHW), 2009 WL 2255727, at *7 (D.N.J. July 27,

2009) (declining to rule on an interpretation of a contract clause at the motion to dismiss stage

and after construing all facts in favor of the plaintiff, finding it pled a claim for breach of

contract based on its interpretation of the clause).

      We will quickly dispose of Plaintiffs' arguments to the contrary. First, Plaintiffs argue

there is no allegation in the Amended Counterclaims that Plaintiffs unanimously agreed to admit

Durant as a member. This is not true. As just noted, execution of the Employment Agreement, which Defendant alleges occurred, could constitute unanimous consent. Plaintiffs also argue that Exhibit D, a memo written by Landy, shows Durant did not complete the purchase of the equity option, and that this Exhibit contradicts the allegations in the Amended Counterclaim, meaning we do not have to take them as true. This argument puts the cart before the horse. We cannot determine whether Durant completed purchase of the equity option without first determining what the terms of the option are. As we already noted, both parties failed to provide an analysis of terms despite the fact that they contend the terms require different things. Therefore, because Plaintiffs skipped a necessary analytic step, we cannot not and need not resolve this issue now.

### D. Durant's Extra-Contractual Claims: Counts I, III, IV, V, VI, VIII

Plaintiffs argue that Defendant's counterclaims for wrongful termination, breach of contract implied in fact, breach of implied covenant of good faith and fair dealing, breach of contract implied in law, unjust enrichment, and detrimental reliance should be dismissed because they depend on the Employment Agreement. For instance, Plaintiffs argue that a claim for breach of a contract implied-in-fact only exists where there is no express written contract between the parties. Therefore, because the Employment Agreement governs the parties' relationship, this claim should be dismissed. Although Defendant's argument is somewhat unclear, Defendant seems to contend that he is pleading alternative theories of recovery which is allowed at the motion to dismiss stage. Specifically, Defendant argues if this Court finds he is a member of the LLC, he can recover under these alternate theories because he has no express contract governing his relationship with AV Design Services given that he never executed the Operating Agreement. Therefore, Defendant argues, without any express contract these equitable theories would be implicated.

It is well settled that a party may plead in the alternative and allege parallel theories of recovery. *See* Fed.R.Civ.P. 8(e)(2) (stating a "party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses," and that a "party may state as many separate claims or defenses as the party has regardless or consistency and whether based on legal [or] equitable" grounds.). For instance, numerous courts in this District have ruled that a breach of contract and unjust enrichment claim may be alleged simultaneously. *U.S. v. Kensington Hosp.*, 760 F.Supp. 1120, 1135 (E.D.Pa.1991) (finding dismissal of unjust enrichment claim premature where federal rules allow pleading alternative theories of recovery); *see also Comcast Spectacor L.P. v. Chubb & Son, Inc.*, No. CIV.A. 05-1507, 2006 WL 2302686, at *23 (E.D. Pa. Aug. 8, 2006) (noting promissory estoppel/detrimental reliance and breach of contract claims may be pled in the alternative).

We agree with Defendant. At this stage of the case, it would be premature to dismiss Defendant's alternative theories of recovery given that we have not definitively ruled on whether Durant is considered a member of the AV Design Services. Therefore, Plaintiffs' motion to dismiss Counts I, III, IV, V, VI, VIII are denied on this basis.

Plaintiffs make two arguments to the contrary which are unpersuasive. First, they argue that Defendant has conceded the existence of an express contract which precludes pleading alternative theories. This misses the point. Defendant's theory is that if he is considered a member of AV Design Services, he has no written contract governing his relationship with AV Design Services because he never executed the Operating Agreement. The concession is relevant to Durant's claims if he is considered an employee but not if he is a member. Therefore, Plaintiffs' may raise this argument at a later appropriate time. Second, Plaintiffs argue because Defendant has not actually labeled his alternative theories of recovery as "alternative," they

16

should be dismissed. This seems contrary to the letter and spirit of the liberal standard set out in Federal Rule of Civil Procedure 8(e), which requires a federal court to construe pleadings "so as to do justice." Likewise, Plaintiffs have cited no binding authority that requires the result that they ask of. Therefore, we decline to dismiss the alternative claims on such a technicality.

### E. Personal Liability

Plaintiffs argue that beside Counts IX, X, and XIII, the amended counterclaims seek damages from Landy and Karadjov which is precluded by N.J.S.A. § 42:2C-30(a). Likewise, because Defendant has not alleged any facts to support piercing the corporate veil, these claims must be dismissed. Defendant contends that this is a dispute between members of AV Design Services and as such, his claims can be brought against Landy and Karadjov personally.

N.J.S.A. § 42:2C-30(a) provides:

> The debts, obligations, or other liabilities of a limited liability company, whether arising in contract, tort, or otherwise:
> (1) are solely the debts, obligations, or other liabilities of the company; and
> (2) do not become the debts, obligations, or other liabilities of a member or manager solely by reason of the member acting as a member or manager acting as a manager.

Generally, personal liability for a member or manager of a limited liability company can be established only where extraordinary circumstances, such as fraud or injustice, warrant piercing the corporate veil. *Torres v. Mbogo*, No. A-4671-18T2, 2020 WL 6112958, at *4 (N.J. Super. Ct. App. Div. Oct. 16, 2020). However, under N.J.S.A. § 42:2C-67(a), a member of an LLC may maintain a direct action against another member "to enforce the member's rights and otherwise protect the member's interests, including rights and interests under the operating agreement or this act or arising independently of the membership relationship." N.J.S.A. § 42:2C-67(a). To do so, the member bringing the action must comply with Subsection (b) of N.J.S.A. § 42:2C-67. Subsection (b) provides "[a] member maintaining a direct action under this section shall plead

and prove an actual or threatened injury that is not solely the result of an injury suffered or threatened to be suffered by the limited liability company." N.J.S.A. § 42:2C-67(b).

Based on these principles, we conclude that if Defendant was admitted as a member of AV Design Services, he may be able to maintain a direct action against Landy and Karadjov to enforce his rights under the Operating Agreement. If he was not a member of AV Design Services, then as Plaintiffs note, Defendant would not be able to pursue many of his claims against Landy and Karadjov individually. Consistent with our prior ruling, we will allow Defendant to pursue these alternative theories of recovery. Therefore, Plaintiffs motion to dismiss the claims under N.J.S.A. § 42:2C-30(a) is denied.

### F. Fraud Claim

Plaintiffs contend Durant's fraud claim should be dismissed because his allegations do not satisfy Rule 9(b)'s particularity requirement and fail to assert the requisite elements of fraud. Plaintiffs further contend that Durant does not identify the specific misrepresentation nor identify any damages he suffered, rather the conduct alleged consists entirely of the purported conversion or false statements directed to others. Defendant argues that his fraud claim is pled with sufficient particularity because he set forth the circumstances under which Landy made false representations and omissions by failing to include invoices in the company books for projects relating to ESPN. He also argues that he alleged he suffered harm from this concealment because the revenue from these projects was not distributed to him as commissions.

Under New Jersey law, the party alleging common law fraud must show that: (1) a material misrepresentation or knowing omission of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity or incompleteness; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting

damages. *Nova Bank v. Samuel D. Schenker*, L.L.C., No. A-0553-13T4, 2015 WL 751529, at *3 (N.J. Super. Ct. App. Div. Feb. 24, 2015). Silence can be fraudulent under the common law in circumstances where there is a duty to disclose. *Perri v. Prestigious Homes, Inc*., 2012 WL 95564, at *5 (N.J.Super.Ct.App.Div. Jan. 13, 2012).

We agree with Plaintiffs that most of Defendant's allegations of fraud smack of derivative claims belonging to AV Design Services, and that Defendant has failed to allege the requisite elements of a common law fraud claim. However, we do not agree that Defendant failed to satisfy the particularity requirement of Rule 9(b).

Pursuant to Rule 9(b), a party alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the other party on notice of the precise misconduct with which [it is] charged. *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir.2007). To satisfy this standard, the party must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation. *Id.*

Defendant allegations of fraud, which set forth several potential theories, easily satisfy the particularity requirement. For the first theory, Defendant alleges that in early 2019, he discovered that Landy changed the invoices in AV Design Services' internal accounting system to reflect that clients had been invoiced for the full contract amount when they should have been invoiced for 50% of that amount. Defendant then lists the names of several of the projects that were allegedly manipulated by Landy and explains how the invoices were changed to reflect completed projects even if they were incomplete. Defendant further explains that this manipulation of the invoices was intended to inflate the value of AV Design Services to prospective buyers. For the second theory, Defendant alleges that some of his customers received Landy's inflated invoices or duplicate invoices for incomplete projects. For the third theory,

19

Defendant alleges that Landy misappropriated company accounts by failing to include invoices and payments in AV Design Services internal accounting system for projects with ESPN. According to Defendant, one of the projects was completed in January of 2019 and the other was an ongoing project, but none of the revenue from these projects was included in the company's internal accounting system. These allegations are more than sufficient to satisfy Rule 9(b).

However, it is unclear from these allegations of fraud how Defendant relied on them to his detriment. In the first two theories, the allegations of fraud are directed toward prospective buyers of AV Design Services and current clients. In the third theory of fraud, the allegation of fraud is directed toward AV Design Services itself. While it is more plausible under the third theory than the first two that Defendant relied on Landy's omissions to his detriment, there are not explicit allegations indicating as such. Therefore, because there are no allegations showing he ever relied on Landy's allegedly fraudulent conduct, Defendant's fraud claim will be dismissed without prejudice. *Scivoletti v. JP Morgan Chase Bank*, N.A., No. CIV. 10-1778, 2010 WL 2652527, at *3 (D.N.J. June 25, 2010) (dismissing a common law fraud claim against JP Morgan Chase even though it inflated the value of the plaintiff's home on their loan application because the plaintiffs did not make any allegations showing they relied on this fraudulent conduct).

### G.  Tortious Interference Claims

Plaintiffs contend that Durant's tortious interference claim should be dismissed because it is nothing more than a recapitulation of the alleged breach of contract claim and no tortious interference claim lies where the claim is directed against a defendant who is a party to the contract at issue. Defendant argues that the tortious interference claim should not be dismissed because he sufficiently pled a claim by alleging: (1) Landy intentionally misappropriated the

company's opportunities to Durant's detriment; (2) Landy intentionally diverted company funds

for his own benefit and such actions interfered with the contractual relations of the company; (3)

Karadjov condoned the actions taken by Landy; and (4) these actions have detrimentally

interfered with the contractual relations of the company and in turn had a detrimental impact on

Durant's interest as a member.

   To allege a claim for tortious interference with contractual relations, a plaintiff must

prove: "(1) actual interference with a contract; (2) that the interference was inflicted intentionally

by a defendant who is not a party to the contract; (3) that the interference was without

justification; and (4) that the interference caused damage." *Strategic Prod. & Servs., LLC v.*

*Integrated Media Techs., Inc*., No. CV1800694KSHCLW, 2019 WL 2067551, at *8 (D.N.J. May

10, 2019). Plaintiffs are correct in principle that a party cannot interfere with his or her own

contract. The appropriate remedy for such a situation lies in contract principles. However, this

issue is not as clear cut as Plaintiffs suggest. While the New Jersey Supreme Court has not

definitely resolved whether an agent can tortiously interfere with a third party's interest in

contractual relations with its principal, the lower New Jersey courts have: an agent may be liable

for tortious interference only if he or she acted outside of the scope of his or her employment or

agency. *DiMaria Const., Inc. v. Interarch*, 351 N.J. Super. 558, 561, 799 A.2d 555, 568–569

(App. Div. 2001), judgment aff'd on other grounds, 172 N.J. 182, 797 A.2d 137 (2002)

(collecting cases). Thus, while it is possible that Landy could be liable for tortiously interfering

with the contractual relations of AV Design Services, at this time, it is unclear from the

counterclaims whether Landy was acting as an agent—that is, as managing member—at the time

he engaged in the tortious conduct. *See* N.J.S.A. 42:2C-27(a); *see also Russo v. Creations By*

*Stefano, Inc*., No. A-0663-18T1, 2020 WL 4873188, at *6 n.9 (N.J. Super. Ct. App. Div. Aug.

20, 2020) (noting an LLC member is not an agent of an LLC simply by virtue of being a member). Therefore, Defendant's claim for tortious interference is dismissed without prejudice.

### H. Conversion

Plaintiff argues that Defendant's counterclaim for conversion should be dismissed because it only applies to tangible objects and Defendant's claim of right to payment of money is not tangible. Defendant contends this is not a right of payment but rather an unlawful retention of his commissions that he was already paid and therefore Durant's claim for conversion is adequately pled. We agree with Plaintiffs.

The common law tort of conversion in New Jersey is defined as the "intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Chicago Title Ins. Co. v. Ellis*, 978 A.2d 281, 287 (N.J. App. Div. 2009), cert. denied, 983 A.2d 1113 (N.J. 2009). This tort has evolved to apply to "money, bonds, promissory notes, and other types of securities, as long as the plaintiff has an actual interest in the security and it is capable of misuse in a way that would deprive the plaintiff of its benefit." *Cargill Global Trading v. Applied Dev. Co.*, 706 F.Supp.2d 563, 578 (D.N.J.2010). The New Jersey Appellate Division made clear that in order to establish conversion, the money converted "must have belonged to the injured party." *See, e.g., Advanced Enterprises Recycling*, 869 A.2d at 472. When money, as opposed to tangible property, is the subject of a conversion claim, New Jersey courts require that a plaintiff show something more than a contractual obligation on the part of a defendant to pay the plaintiff to establish conversion. *See id.* ("An action for conversion will not lie in the context of a mere debt . . . "). The plaintiff must show that the money in question was identifiably the plaintiff's property or that the defendant was obligated to segregate such money for the plaintiff's

benefit. *See Communications Programming, Inc. v. Summit Manufacturing, Inc*., No. 98–253, 1998 WL 329265, at \*5 (D.N.J. June 16, 1998) (holding that plaintiff did not establish a claim for conversion of commissions due under a contract because he failed to show that the money converted belonged to him).

When Defendant decided to use his commissions to pay for purchase of the Equity Ownership Option, his commissions became an asset of AV Design Services. The Employment Agreement specifically states, "any funds paid by Employee to be applied against the Equity Option Price constitut[e] an asset of the Company." Therefore, the money allegedly converted by Plaintiffs did not previously belong to Defendant, it belonged to AV Design Services. Once Defendant was terminated, he had a contractual right, under Section 6.2 of the Employment Agreement, to return of all funds paid toward the Equity Ownership Option. Thus, Defendant's remedy is in breach of contract, not conversion. Accordingly, Plaintiffs' motion to dismiss the conversion claim is granted.

## I.   Violation of the New Jersey Wage and Hour Law

Plaintiffs contend that there is no private cause of action under the New Jersey Wage and Hour law and therefore Durant's counterclaim under this law should be dismissed. Defendant contends that courts have recognized private causes of action under the NJWHL for unpaid wages, and therefore he is entitled to bring an action under this law to recover his unpaid commissions.

It seems to be well settled that there is a private cause of action under the NJWHL to recover unpaid overtime wages. *See Thompson v. Real Estate Mortg. Network, Inc*., 106 F. Supp. 3d 486, 489–92 (recognizing a private right of action to recover unpaid overtime under the NJWHL). However, like the FLSA, the NJWHL does not provide a remedy for unpaid, non-

overtime wages. *Brunozzi v. Crossmark, Inc.*, No. 13-4585 (RBK/JS), 2016 WL 112455, at *5 (D.N.J. Jan. 11, 2016). Therefore, because Defendant is seeking unpaid commissions, which do not constitute unpaid overtime, he may not recover these wages under the NJWHL. *See id.* (concluding the plaintiff could not recover unpaid wages for non-overtime work under the NJWHL because the FLSA and NJWHL did not provide a remedy for such claims).

### J.  Demand for Accounting

Plaintiffs argue the demand for accounting claim should be dismissed because a demand for accounting is a judicial remedy, not an independent cause of action, and because Durant is an employee, he never had a right to gain access to the books. Defendant contends that under New Jersey law a demand for accounting is an independent cause of action and that he is entitled to gain access to the books and records because he is a member of AV Design Services.

Plaintiffs arguments are unpersuasive. First, Plaintiffs cite to several out of circuit cases that are not binding on this Court. Second, Plaintiffs' argument that this claim should be dismissed because Durant is not member presupposes that their earlier argument was correct. It was not. Therefore, because we concluded that Durant has plausibly alleged he was admitted as a member of AV Design Services and he is merely pleading an alternative theory of recovery, Plaintiffs' motion to dismiss the demand for accounting is denied.

### K.  Declaratory Judgment

Plaintiffs argue that Defendant's declaratory judgment should be dismissed because Durant is not a member of AV Design Services and it is entirely duplicative of Durant's claim for breach of the Employment Agreement. Defendant contends that he is a member of AV Design Services for the reasons argued above and conversely, to the extent that his declaratory

judgment claim is dismissed, this Court should then also dismiss Plaintiff's declaratory judgment claim that Durant is not a member.

Courts routinely dismiss declaratory judgment claims when they are duplicative of breach of contract claims. *See, e.g., Butta v. GEICO Cas. Co*., 400 F. Supp. 3d 225, 233 (E.D. Pa. 2019) (collecting cases); *see also In re Lincoln Nat'l COI Litig*., 269 F. Supp. 3d 622, 639–40 (E.D. Pa. 2017) (granting the motion to dismiss and holding the declaratory judgment claim was duplicative of the breach of contract claim because the plaintiffs requested declaratory relief was to resolve the parties' obligations under the applicable insurance policies); *Nova Fin. Holdings Inc. v. Bancinsure, Inc*., Civil Action No. 11-07840, 2012 WL 1322932, at *4 (E.D. Pa. Apr. 17, 2012) (holding the declaratory judgment claim was duplicative of the breach of contract claim where the plaintiffs requested a declaratory judgment "as to the obligations rendered by the insurance agreement on [the insurer]" and reasoning that the plaintiffs would not be prejudiced because they could still attain full relief on their breach of contract claim).

Defendant's declaratory judgment claim is entirely duplicative of his breach of contract claim. In his breach of contract claim, he alleges that Plaintiffs breached the Operating and Employment Agreement. In his declaratory judgment claim, he also alleges that Plaintiffs breached their obligations to him under the Operating and Employment Agreement. Therefore, dismissal of the declaratory judgment claim will not prejudice Defendant because adjudication of the breach of contract claim will still resolve the same issue. That is, the question raised in the breach of contract claim—whether Durant was admitted as a member of AV Design Services— will necessarily decide the question raised in the declaratory judgment claim. Accordingly, we will grant Plaintiffs' motion to dismiss the declaratory judgment claim.

**L.  Punitive Damages and Attorney's Fees**

Plaintiffs argue that Defendant's claim for punitive damages is incorrect as a matter of law because New Jersey does not permit punitive damages for breach of contract claims. Likewise, Plaintiffs contend Defendant cannot recover attorneys' fees because they can only be recovered as provided by contract, statute, or court rule and Defendant has not pointed to any authority showing as such. Defendant argues that punitive damages are allowed for wantonly reckless or malicious conduct and he has pled that Landy engaged in such conduct. Likewise, Defendant argues that punitive damages are allowed for claims of fraud and conversion, which he has pled. Lastly, Defendant argues that *Dorofee v. Pennsauken Tp. Planning Bd.*,187 N.J. Super. 141, 144, (App.Div.1982) supports his position that he may recover counsel fees and costs.

Under New Jersey law, punitive damages are governed by the Punitive Damages Act, N.J. Stat. Ann. § 2A:15–5.09, et. seq. ("NJPDA"), which provides that:

> [t]o recover punitive damages, the plaintiff must demonstrate by clear and convincing evidence that the harm suffered was the result of defendant's acts or omissions, and such acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions. This burden of proof may not be satisfied by proof of any degree of negligence including gross negligence.

N.J. Stat. Ann. § 2A:15–5.12(a). Punitive damages are usually not awarded in breach of contract cases. *Kurnik v. Cooper Health Sys.*, No. A-4686-06T1, 2008 WL 2829963, at *16 (N.J. Super. Ct. App. Div. July 24, 2008). However, punitive damages can be awarded where there was a breach of trust between the parties "beyond the contractual breach," such as that between an oppressed shareholder and a closely-held corporation. *Id.*

Therefore, we agree with Plaintiffs' that Defendant cannot recover punitive damages for the breach of contract claims, but he may be able to pursue these damages under alternative theories of recovery if he amends his counterclaims. Likewise, Defendant cannot pursue punitive

damages with respect to the conversion claim because it is dismissed. At this time, Defendant cannot pursue punitive damages with respect to the fraud claim either because we dismissed that claim as well.

With respect to attorneys' fees, we agree with Defendant in principle. The default rule, as cited by Plaintiffs, is that absent a statute, court rule or contract authorizing legal fees, they may not be awarded. *Litton Indus., Inc. v. IMO Indus., Inc*., 200 N.J. 372, 385 (2009). However, an exception to this rule is that attorneys' fees may be recoverable as "damages" where "[o]ne who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third party." *Dorofee v. Plan. Bd. of Pennsauken Twp*., 187 N.J. Super. 141, 144 (App. Div. 1982). Therefore, Defendant is correct that if he had to bring this suit against AV Design Services as a result of Landy's fraudulent conduct, he *may* be able to recover his attorneys' fees. *See DiMisa v. Acquaviva*, 198 N.J. 547, 555, 969 A.2d 1091, 1096 (2009) (reversing the award of counsel fees because the defendant, a corporation, was not a third party since the alleged tortfeasor used the corporation to carry out his wrongful conduct). However, because we dismissed Defendant's fraud claim, at this time, Defendant cannot pursue his request for attorney's fees.

## IV.    CONCLUSION

For the reasons expressed above, Defendant's Motion for Summary Judgment is **DENIED**, his claims for fraud and tortious interference with contractual relations are **DISMISSED WITHOUT PREJUDICE**, and his claims for conversion, violation of the New Jersey Wage and Hour law, and a declaratory judgment are **DISMISSED WITH PREJUDICE**. Therefore, Plaintiffs' Motion to Dismiss is **GRANTED** in part.

27

Dated: 3/25/2021                                    s/ Robert B. Kugler
                                                    ROBERT B. KUGLER
                                                    United States District Judge