**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| AV DESIGN SERVICES, LLC *et al.*, | HONORABLE KAREN M. WILLIAMS |
| Plaintiffs, | |
| v. | Civil Action<br>No. 19-8688-KMW-MJS |
| JAMES M. DURANT *et al.*, | |
| Defendants. | **OPINION** |

APPEARANCES:

ANDREW JOHN KYREAKAKIS, ESQ.
WEINER LESNIAK LLP
629 PARSIPPANY ROAD
PARSIPPANY, NJ 07054

 *Counsel for Plaintiffs and Counter Defendants AV Design Services, LLC, Rossen Karadjov, James E. Landy*

CHINH TY NGUYEN, ESQ.
JAY R. MCDANIEL, ESQ.
WEINER LAW GROUP LLP
629 PARSIPPANY ROAD, P.O. BOX 483
PARSIPPANY, NJ 07054

 *Counsel for Plaintiffs and Counter Defendants AV Design Services, LLC, Rossen Karadjov, James E. Landy*

MARY WILLIAMSON CHATTEN, ESQ.
DASH FARROW, LLP
39 EAST MAIN STREET
MOORESTOWN, NJ 08057

 *Counsel for Defendant and Counter Claimant James M. Durant*

ARTHUR JOEL ABRAMOWITZ, ESQ.
BRUCE S. LUCKMAN, ESQ.
SHERMAN SILVERSTEIN KOHL ROSE & PODOLSKY
308 HARPER DRIVE, SUITE 200
MOORESTOWN, NJ 08057

 *Counsel for Defendant James J. Grimes*

CARLO SCARAMELLA
LAW OFFICES OF CARLO SCARAMELLA, LLC
10000 LINCOLN DRIVE EAST, SUITE 201
MARLTON, NJ 08053

*Counsel for Defendant James J. Grimes and Grant Advanced Video Technology, LLC*

**WILLIAMS, District Judge:**

### I. INTRODUCTION

This matter comes before the Court by way of Plaintiffs AV Design Services, LLC, Rossen Karadjov, and James E. Landy's Cross Motion to Vacate and/or Modify Arbitration Award (ECF No. 158) (hereinafter "Cr. M. to Vacate"). On May 12, 2023, Defendants James Grimes and Grant Advanced Video Technology LLC entered a Motion to Confirm Arbitration Award (ECF No. 156) (hereinafter "M. to Confirm"), following the conclusion of the mandated arbitration ordered by this Court in its March 17, 2022 Opinion (ECF No. 154). Defendants opposed Plaintiffs' Cross Motion (ECF No. 160) (hereinafter "Opp. to Cr. M."), and Plaintiffs replied thereto (ECF No. 164). Pursuant to Local Civil Rule 78.1(b), this motion will be decided on the papers without oral argument. For the reasons set forth below, Plaintiffs' Cross Motion to Vacate and/or Modify Arbitration Award (ECF No. 158) is **DENIED** and Defendants' Motion to Confirm Arbitration Award (ECF No. 156) is **GRANTED**.

### II. BACKGROUND

Plaintiffs Landy and Karadjov and Defendant Grimes were equal members of Defendant AV Design Services LLC ("AVDS"). *See* Pl.'s Compl. ¶¶ 1, 10-11. In June of 2015, Defendant Durant joined the company as an employee, but later endeavored to purchase a membership interest in AVDS. *See id.* Ultimately, Defendants Grimes and Durant were terminated, resulting

in the ensuing litigation. Pursuant to this Court's March 17, 2022 Opinion (ECF No. 154), the instant case was stayed pending arbitration.

On April 28, 2023, the Honorable Francis J. Orlando, Jr., A.J.S.C. (ret.) granted a Final Arbitration Award and made several factual findings, which the parties do not contest. Cr. M. to Vacate at 2; Opp. to Cr. M. at 1. First, Judge Orlando found that Defendant Grimes was wrongfully dissociated from the business, and that his termination as a minority shareholder constituted oppression.[1] M. to Confirm at 3-4. Second, Judge Orlando found that Plaintiffs Karadjov and Landy acted in bad faith when terminating Defendant Grimes' employment, thereby breaching the covenant of good faith and fair dealing implicit in the business's Operating Agreement. *Id*. at 4. Third, Judge Orlando found that the most fair and equitable solution was for Plaintiffs, jointly and severally, to purchase Grimes' membership interest in AVDS for fair value pursuant to N.J.S.A. 42:2C-48(b).[2] *Id*. Thus, the final award issued by Judge Orlando included (1) $129,483.00 attributed to Defendant Grimes' capital account, (2) $634,000.00 representing one-third of ADVS' membership interest, and (3) legal fees and costs totaling $1,179,615.52. *Id.* at Attachment 3. On May 12, 2023, Defendants petitioned this Court to confirm the Arbitration Award.

On June 6, 2023, Plaintiffs filed their Cross-Motion, requesting that this Court vacate or modify the Arbitration Award. Therein, Plaintiffs argue that Judge Orlando overstepped his

---

[1] Oppression is defined as "frustrating a shareholder's reasonable expectations" and "is usually directed at a minority shareholder personally . . . ." *Brenner v. Berkowitz*, 134 N.J. 488, 506 (N.J. 1993).

[2] N.J.S.A. 42:2C-48(b) provides: "[i]n a proceeding brought under paragraph (4) or (5) of subsection a. of this section, the court may order or a party may seek a remedy other than dissolution, including, but not limited to, the appointment of a custodian or one or more provisional managers. The court shall appoint a custodian or one or more provisional managers if it appears to the court that such an appointment may be in the best interests of the limited liability company and its members. In any proceeding under this section, the court shall allow reasonable compensation to any custodian or provisional manager for his or her services and reimbursement or direct payment of all his or her reasonable costs and expenses, which amounts shall be paid by the limited liability company. The court may appoint a custodian or one or more provisional managers in a summary proceeding or otherwise; or order the sale of all interests held by a member who is a party to the proceeding to either the limited liability company or any other member who is a party to the proceeding, if the court determines in its discretion that such an order would be fair and equitable to all parties under all of the circumstances of the case."

3

authority when he imposed joint and several liability on Plaintiffs and that it was misconduct when he fashioned the final Arbitration Award amount. Cr. M. to Vacate at 15-23, 25-26. More specifically, Plaintiffs argue that the value of Grimes' membership interest is overvalued because the calculation includes Plaintiff Landy's "personal goodwill" and impermissibly credited it to ADVS. *Id*. at 16-17.

### III.  LEGAL STANDARD

There exists a strong presumption in favor of enforcing arbitration awards, both manifest in the Federal Arbitration Act ("FAA") and supported by the Third Circuit. *See Brentwood Med. Assocs. v. United Mine Workers of Am.*, 396 F.3d 237, 241 (3d Cir. 2005). Section 9 of the FFA states in pertinent part:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.

9 U.S.C. § 9. "The Supreme Court has held that the courts play only a limited role when asked to review the decision of an arbitrator." *E. Atl. States Reg'l Council of Carpenters, UBCJA v. CMS Constr., Inc.*, No. 22-1615, 2022 WL 17991613 at *3 (D.N.J. Dec. 29, 2022) (quoting *Wilkes Barre Hosp. Co. v. Wyo. Valley Nurses Ass'n PASNAP*, 453 F. App'x 258, 260 (3d Cir. 2011)). Thus, the Court's ability to review the arbitration award is circumscribed—courts are not authorized to reconsider the merits of an award and must accord arbitration decisions with "exceptional deference." *Id*. (quoting *Handley v. Chase Bank USA NA*, 387 F. App'x 166, 168 (3d. Cir. 2010)).

The moving party bears the burden of proving that the arbitration award should be vacated, and thus "faces a steep uphill battle." *Ario v. Underwriting Members of Syndicate 53 at Lloyds*, 618 F.3d 277, 296 (3d Cir. 2010). The Court must "begin with the presumption that the award is

authority when he imposed joint and several liability on Plaintiffs and that it was misconduct when he fashioned the final Arbitration Award amount.  Cr. M. to Vacate at 15-23, 25-26.  More specifically, Plaintiffs argue that the value of Grimes' membership interest is overvalued because the calculation includes Plaintiff Landy's "personal goodwill" and impermissibly credited it to ADVS. *Id*. at 16-17.

### III.  LEGAL STANDARD

There exists a strong presumption in favor of enforcing arbitration awards, both manifest in the Federal Arbitration Act ("FAA") and supported by the Third Circuit. *See Brentwood Med. Assocs. v. United Mine Workers of Am.*, 396 F.3d 237, 241 (3d Cir. 2005). Section 9 of the FFA states in pertinent part:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.

9 U.S.C. § 9.  "The Supreme Court has held that the courts play only a limited role when asked to review the decision of an arbitrator." *E. Atl. States Reg'l Council of Carpenters, UBCJA v. CMS Constr., Inc.*, No. 22-1615, 2022 WL 17991613 at *3 (D.N.J. Dec. 29, 2022) (quoting *Wilkes Barre Hosp. Co. v. Wyo. Valley Nurses Ass'n PASNAP*, 453 F. App'x 258, 260 (3d Cir. 2011)).  Thus, the Court's ability to review the arbitration award is circumscribed—courts are not authorized to reconsider the merits of an award and must accord arbitration decisions with "exceptional deference." *Id*. (quoting *Handley v. Chase Bank USA NA*, 387 F. App'x 166, 168 (3d. Cir. 2010)).

The moving party bears the burden of proving that the arbitration award should be vacated, and thus "faces a steep uphill battle." *Ario v. Underwriting Members of Syndicate 53 at Lloyds*, 618 F.3d 277, 296 (3d Cir. 2010).  The Court must "begin with the presumption that the award is

enforceable." *Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 251 (3d Cir. 2013) (internal citation omitted).  An arbitration award is "presumed valid unless it is affirmatively shown to be otherwise," *Brentwood Med. Assocs.*, 396 F.3d at 241, and as long as the award "draws its essence from the . . . agreement, and is not merely [the arbitrator's] own brand of industrial justice, the award is legitimate." *E. Atl. States Reg'l Council of Carpenters*, 2022 WL 17991613 at *3 (quoting *United Paperworks Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36 (1987)) (internal quotations omitted).  Furthermore, the Court is not to correct any factual or legal errors made by the arbitrator, and can only justify interfering if such errors affect the rights of a party so much so that it may be said that the party was deprived of a fair hearing.  *See Whitehead v. Pullman Grp., LLC*, 811 F.3d 116, 120 (3d Cir. 2016).  The Court must grant an order confirming an arbitration award unless the award is vacated, modified, or corrected pursuant to the narrow and exclusive circumstances provided by the FAA.  *See Hall St. Assocs. LLC v. Mattel, Inc.*, 552 U.S. 576, 586-87 (2008).

The ability of the Court to vacate an award is limited to four circumstances.  "Under the [FAA], a court must confirm an arbitration award unless: [1] it was procured by corruption, fraud, or undue means; [2] the arbitrators demonstrated partiality or corruption; [3] they were guilty of misconduct; or [4] they exceeded their powers." *Anoruo v. Tenet HealthSystem Hahnemann*, 697 Fed. Appx. 110, 111 (3d Cir. 2017) (citing 9 U.S.C. §§9, 10(a)(1)-(4)).  Similarly, there are only three circumstances where a court may modify or correct an award: (1) where there has been a "material miscalculation" or mistake in identifying a party or property; (2) an award was based upon matters not presented to the arbitrator; or (3) the award is "imperfect" in a matter of form that does not affect the merits of the controversy.  *See* 9 U.S.C. § 11(a)-(c).  If one of these latter three events has occurred, the Court may modify and correct the award so as to effectuate its intent and promote justice between the parties.  *Id*.

5

IV. DISCUSSION[3]

    A. 9 U.S.C. § 10 – Vacatur[4]

The Third Circuit allows vacatur if the award is "completely irrational"; that is, when there is nothing in the record to justify an arbitrator's decision. *Zakarin v. Wells Fargo Advisors,* LLC, No. 17-1088, 2017 U.S. Dist. LEXIS 183109 at *5 (D.N.J. Nov. 3, 2017) (citing *News America Publications, Inc. Daily Racing Form Division v. Newark Typographical Union, Local 109*, 918 F.2d 21, 24 (3d Cir. 1990)); *Mutual Fire, Marine & Inland Ins. Co. v. Norad Reinsurance Co. Ltd.*, 868 F.2d 52, 56 (3d Cir. 1989). While a court cannot vacate an arbitration award due to legal errors, a court may vacate an award if the arbitrator shows "manifest disregard for the law." *Id*. (citing *Tanoma Min. Co., Inc. v. Local Union 1269, United Mine Workers of America*, 869 F.2d

---

[3] Plaintiffs also seek vacatur pursuant to N.J.S.A. 2A:23B-23 which, similar to the FAA, permits courts to vacate an arbitration award only if, among other things, "(1) the award was procured by corruption, fraud, or other undue means; (2) the court finds evident partiality by an arbitrator; corruption by an arbitrator; or misconduct by an arbitrator prejudicing the rights of a party to the arbitration proceeding; (3) an arbitrator refused to postpone the hearing upon showing of sufficient cause for postponement, refused to consider evidence material to the controversy, or otherwise conducted the hearing . . . so as to substantially prejudice the rights of a party to the arbitration proceeding; [or] (4) an arbitrator exceeded the arbitrator's powers." *See also United Merch. Wholesale Inc. v. Direct Containers Inc.*, No. 18-617, 2018 WL 3601232 at *2 (D.N.J. Jul. 26, 2018) (observing that there is "no relevant distinction" between the FAA and the NJUAA vacatur standards). Thus, the Court will not duplicate its discussion and considers those matters addressed herein.

[4] Plaintiffs also allege that the arbitrator engaged in various acts described as "misconduct." However, misconduct pursuant to 9 U.S.C. § 10(a)(3) is largely found where an arbitrator refuses to hear evidence pertinent to the controversy. *See* 9 U.S.C. § 10(a)(3) (permitting vacatur "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced[.]"); *see also Vitarroz Corp. v. G. Willi Food Int'l Ltd.*, 637 F. Supp. 2d 238, 248-49 (D.N.J. 2009) (describing "misconduct" in the context of 9 U.S.C. § 10(a)(3)) (stating that "[s]ection 10(a)(3) cannot be read, however, to intend that every failure to receive relevant evidence constitutes misconduct which will require the vacation of an arbitrator's award. Instead, misconduct under § 10(a)(3) will not be found unless the aggrieved party was denied a fundamentally fair hearing." (internal citations and quotations omitted)). Plaintiffs allege only one incident which they claim falls under this definition of misconduct. Specifically, they assert that the arbitrator failed to follow the applicable Commercial Rules of the AAA when he struck Plaintiffs' Counter Statement of Facts and Selected Relevant Law and Objection to the application, in violation of AAA rules, and that he "ignored" all of AVDS counterclaims and affirmative defenses. Cr. M. to Vacate at 27, 31. The Court rejects this argument. Judge Orlando provided a written explanation as to why he struck the statement. He specifically reasoned that it violated Rule R-5 because such statements are supposed to be brief and not in the form of substantive legal argument—arguments that the parties would have had the opportunity to present later and in a more fulsome manner. *See* Cr. M. to Vacate at 7. The Court further notes that Judge Orlando received testimony from all key witnesses, received expert reports, and even received and responded to argument from Plaintiffs after the interim award was issued. Given the record before the Court, it cannot find that the parties were denied a fundamentally fair hearing.

6

745, 749 (3d Cir. 1990)). An arbitration award can also be vacated if it "violates a clearly defined public policy as 'ascertained by reference to the laws and legal precedents.'" *Id*. (quoting *Easter Associated Coal Corp. v. United Mine Workers of America*, 531 U.S. 57, 62-3 (2000)).

### 1) § 10(a)(4) Arbitrator Exceeded his Powers[5]

Plaintiffs' main contention is that Judge Orlando exceeded his powers as defined by 9 U.S.C. §10 (4). Plaintiffs' various complaints boil down to two specific concerns: they dispute the value of Grimes' membership share as found by the arbitrator and oppose the arbitrator's imposition of joint and several liability. However, the Court finds that this is nothing more than a veiled attempt to obviate the parties' agreement to final and binding arbitration, which falls short of overcoming the "steep uphill battle" to shake the presumptive legitimacy of the arbitration award. *Ario,* 618 F.3d at 296.

### a) Value of Grimes' Membership Share

This Court finds that Judge Orlando's valuation of Grimes' membership share is rational and is supported by sufficient facts and applicable law. Plaintiffs present creative arguments with respect to their theory of restrictive covenant based on the "goodwill" of Landy. However, their creativity falls short of the applicable legal standard and, in fact, bolsters the basis of Judge Orlando's award.

Plaintiffs argue that the fair value of ADVS was inflated due to the inclusion of Landy's personal goodwill. Cr. M. to Vacate at 12, 16. Plaintiffs further assert that the only way the value of ADVS could include Landy's personal goodwill is if it were transferred to the company through a restrictive covenant, which is not present in the Operating Agreement. *Id*. Plaintiffs also point to the fact that the appraisal expert, Michael Lehner, presented a valuation schedule that showed

---

[5] To the extent that other arguments were presented by Plaintiffs regarding vacatur under § 10(4), the Court declines to discuss them because they are clearly meritless.

7

two separate determinations of value of the company, one of which included Landy's goodwill. Plaintiffs also assert that the arbitrator "adopted" the report and ignored the contract by choosing the "wrong calculation" that included Landy's goodwill to determine Grimes' membership share's value. *Id* at 19-20.

In the Interim Arbitration Award, Judge Orlando addressed the issue of Landy's "goodwill" head on: "I [did not] account for any alleged goodwill of Landy.  During his testimony Landy acknowledged that much of his claimed client base would remain with the company, if he left." M. to Confirm at Ex. B (attachment 5) at 20.  This conclusion does not "graft on" a "restrictive covenant," but rather adheres to the principles of New Jersey contract law.  To lower the company's value based on Landy's "goodwill," Judge Orlando would have been required to find that Landy qualified as a "key-person" and consequently apply the "key-person discount." This, in turn, would have adjusted for the risk of holding an interest in a company with an "unusually concentrated dependence on one executive[.]" *Wisniewski v. Walsh*, No. A-0825-10T4, A-0826-10T4, 2013 WL 1296067 at *14 (N.J. Super. Ct. Apr. 2, 2013) (holding that the key-person discount was applicable where one executive was uniquely responsible for the company's success, had extensive relationships with customers, and where company performance declined during his absence but grew upon his return).  Again, Judge Orlando did not find a "key-person discount" was applicable because Landy himself testified that "much of his claimed client base would remain with the company, if he left."  M. to Confirm at Ex. B (attachment 5) at 20. Judge Orlando also found that Grimes had made significant contributions to the company's success. *Id*. at 19.

Under New Jersey contract law, the fair value of a corporation is to be determined on a case-by-case basis with the "guiding principle" that discounts cannot be used unfairly by parties "whose misconduct and bad faith caused the corporate split to benefit themselves to the detriment

8

of injured parties." *Spiko v. Koger, Inc.*, 251 N.J. 162, 184-85 (N.J. 2022). The New Jersey Revised Uniform Limited Liability Company Act ("NJ RULLCA"), N.J.S.A. §§ 42:2C-1 *et seq.*, incorporates this same principle of fairness in situations where there is oppression of company members. *See* N.J.S.A. 42:2C-48(a)(5)(b). In passing the NJ RULLCA, the New Jersey Legislature specifically adopted an oppressed member provision that grants courts wide latitude to provide a fair and equitable resolution when a manager or members have acted in a manner that was oppressive and harmful to a minority member. *Id.*[6] Here, Judge Orlando found that Grimes' termination constituted oppression. In doing so, he cited directly to the oppressed member provision of the RULLCA in his explanation of damages, and expressly noted that he would not apply discounts to the value of Grimes' membership interest due to the oppression and bad faith acts of Landy and Karadjov. M. to Confirm at Ex. B (attachment 5) at 19-20.

In addition, Judge Orlando also addressed Plaintiffs' concern about the amount awarded in relation to Grimes' membership share again after the interim award was issued. Indeed, Judge Orlando considered Plaintiffs' additional arguments that he had "double counted" the value of Grimes' equity interest when utilizing Mr. Lehner's expert report. *See* M. to Confirm at Ex. C (attachment 6) at 1. In doing so, he reiterated that he utilized Mr. Lehner's report and specifically indicated that he found persuasive Mr. Lehner's determination of "reasonable compensation" for officers. He also noted that his computation of AVDS's value did not take into account that Grimes' Capital Account was utilized to arrive at his conclusion; that the value of AVDS was $1,901,429.00; and that Mr. Lehner "did not testify that Grimes should *not* be given a specific

---

[6] The Court notes that Judge Orlando, as an arbitrator, applied the principles of equity and fairness as required by the Operating Agreement and the NJ RULLCA. *See* M. to Confirm at Ex. B (attachment 5) at Ex. A at ¶ 22(i) (stating that the arbitrator may assess costs, including counsel fees, "in such a manner as the arbitrator deems fair and equitable."); N.J.S.A. § 42:2C-48(b) ("The court may order or a party may seek a remedy other than dissolution, including, but not limited to, [. . .] order the sale of all interests held by a member who is a party to the proceeding to either the limited liability company or any other member who is a party to the proceeding, if the court determines in its discretion that such an order would be fair and equitable to all parties under all of the circumstances of the case.").

9

award for his Capital Account *because* it is included in the valuation of his equity interest." *Id*. at 3 (emphasis added).

As discussed above, Judge Orlando's calculation is not "wholly irrational." To the contrary, it is supported by ample evidence in the record. *See CPR Mgmt., S.A. v. Devon Park Bioventures, L.P.*, 19 F.4th 236, 246 (3d Cir. 2021) (quoting *Sutter v. Oxford Health Plans LLC*, 675 F.3d 215, 219-20 (3d Cir.2012)) ("To the extent [a party] is arguing that the award should be vacated under Section 10(a)(4), it would need to show that the arbitrator 'grant[ed] relief in a form that cannot be rationally derived from the parties' agreement and submissions or issue[d] an award that is so completely irrational that it lacks support altogether.'"). Judge Orlando utilized the expert reports to come to his conclusion and explained how each impacted his calculations, twice. *See* M. to Confirm at Ex. B (attachment 5) at 19-20; Ex. C (attachment 6) at 3. Thus, the Court has no basis to vacate the award based on Plaintiffs' arguments related to the value of Grimes' membership share. *Zakarin*, 2017 U.S. Dist. LEXIS 183109 at *5 (holding that vacatur is permitted where the award is "completely irrational," such that there is nothing in the record to justify an arbitrator's decision).

### b) Joint & Several Liability

Only where there is a "manifest disregard of the agreement, totally unsupported by principles of contract construction and the law [. . .] may a reviewing court disturb the award." *News America Publications, Inc., Daily Racing Form Div. v. Newark Typographic*, 918 F.2d 21, 24 (3d Cir. 1990) (internal citations and quotations omitted). Here, it is clear from Judge Orlando's

awards that he did not disregard the Operating Agreement, and that he in fact supported his reasoning with the principles of the NJ RULLCA.[7]

Plaintiffs argue that the arbitrator abused his powers when he fashioned the arbitration award to be applied to Plaintiffs jointly and severally. Cr. M. to Vacate at 22. Plaintiffs further submit that the "subjective motive" for breaching a contract is immaterial and that "[a]nyone is entitled to breach a contract with or without cause." *Id*. at 21-22. Further, Plaintiffs contend that Judge Orlando had transformed the breach of contract claim into one for tort by looking to the "subjective intent" behind Grimes' termination. *Id*. at 21.

The NJ RULLCA provides the traditional benefits of a limited liability company: "[t]he debts, obligations, or other liabilities of a limited lability company, whether arising in contract, tort, or otherwise . . . are solely the debts, obligations, or other liabilities of the company." N.J.S.A. 42:2C-30. However, this protection is limited. The NJ RULLCA also provides that liability protection only exists so long as "the company agent compli[es] with the duties stated in sections 35 and 39 of th[e] act." N.J.S.A. 42:2C-38(c). Section 39 imposes on members of a member-managed limited liability company duties of loyalty and care, requiring them to "discharge the duties under [the] act or under the operating agreement and exercise any rights consistently with the contractual obligation of good faith and fair dealing." N.J.S.A. 42:2C-39(d). Thus, if members violate these duties, they may not utilize the protections afforded to them under the NJ RULLCA. *See Landcor Holdings, L.P. v. Brown*, No. BUR-L-1619-20, BUR-L-854-20, 2023 N.J. Super. Unpub. LEXIS 1058 at *6-7 (N.J. Super. Ct. May 12, 2023). The Operating Agreement also states that "[t]he Members, as such, shall not be liable for the debts, obligations, or liabilities of the

---

[7] Though the parties agree that the NJ RULLCA applies, the Court also notes that the Operating Agreement itself confirms that the act applies to the Agreement in its definitions. *See* M. to Confirm at Ex. B (attachment 5) Ex. A at ¶ 1.

Company *except to the extent required by the Act*." M. to Confirm at Ex. B (attachment 5) at Ex. A at ¶ 16(i).

Here, Judge Orlando found that Karadjov and Landy acted in bad faith in terminating Grimes' employment because the Operating Agreement only permitted the termination of members *for cause*. He further found all of Karadjov and Landy's complaints regarding Grimes' employment to be pretextual. M. to Confirm at Ex. B (attachment 5) at 18. Grimes' termination thus violated the Operating Agreement's covenant of good faith and fair dealing, an obligation implicit in all contracts in New Jersey. *See Sons of Thunder Inc. v. Borden, Inc.*, 148 N.J. 396, 420-21 (N.J. 1997) ("Every contract in New Jersey contains an implied covenant of good faith and fair dealing."). Therefore, because Karadjov and Landy violated Section 39 of the NJ RULLCA, they did not get to reap the benefits of the statute's liability protections. *See* N.J.S.A. 42:2C-38(c); N.J.S.A. 42:2C-39(d).

Plaintiffs also argue that Judge Orlando's assertion that Karadjov's motives of "naked self-interest" are irrelevant and go against contract law. N.J.S.A. 42:2C-39(e) states that "[a] member does not violate a duty or obligation under [the] act or under the operating agreement merely because the member's conduct furthers the member's own interest." However, the act of voting to terminate Grimes' without just cause violates the Operating Agreement. As explained above, it breached the obligations Karadjov had to act in good faith. In other words, Karadjov's act of terminating Grimes went above conduct that simply furthered his own interest; it was, in fact, oppressive toward Grimes. Thus, Judge Orlando did not magically transform the contract claim into one for tort—he simply followed the NJ RULLCA and applied New Jersey contract law.

The NJ RULLCA provides wide latitude for the creation of an appropriate remedy that is fair and equitable to all parties in light of all of the circumstances of a given case. Though the NJ

12

RULLCA provides various options, it contemplates the creation of remedies that go beyond those expressly delineated. *See* N.J.S.A. § 42:2C-48(b). It is clear to the Court that the parties received a fair hearing, and that Judge Orlando thoughtfully crafted his final award to provide a just and equitable outcome. *Whitehead*, 811 F.3d at 120. Therefore, the Court finds no good cause to vacate the award pursuant to 9 U.S.C. § 10.

### B. 9 U.S.C. § 11 – Modify or Correct Award

To modify or correct an arbitration award, a district court must first conclude that at least one of the statutory grounds for modification exists. *CPR Mgmt.*, 19 F.4th at 247. The three grounds set forth in 9 U.S.C. §11 are: (1) where there has been a "material miscalculation" or mistake in identifying a party or property; (2) where an award was based upon matters not presented to the arbitrator; or (3) where the award is "imperfect" in a form that does not affect the merits of the controversy. *See* 9 U.S.C. § 11(a)-(c). Plaintiffs do not specify in their briefing which of the three circumstances they believe applies in this case. But based on Plaintiffs' arguments under 9 U.S.C. § 10, the Court construes Plaintiffs' grounds to be either a "material miscalculation" or a mistake in identifying property. In other words, the arbitrator either mistakenly identified Plaintiff Landry's "personal goodwill" as AVDS' goodwill, or the award was merely "imperfect" and Plaintiffs now wish to change the aspects of the award they find disagreeable. Given the discussion above regarding Judge Orlando's reasons for fashioning the arbitration award, the Court invokes its discretion and declines to modify or correct the award.

Further, the Court notes that the Operating Agreement calls for final and binding arbitration for "[a]ll disputes arising under this Agreement." M. to Confirm at Ex. B (attachment 5) at Ex. A ¶ 22(i). This is the essence of the contract and Judge Orlando has honored it. Plaintiffs must do the same.

## V.     CONCLUSION

For the reasons set forth above, Plaintiffs' Cross Motion to Vacate and/or Modify Arbitration Award (ECF No. 158) is **DENIED** and Defendants' Motion to Confirm Arbitration Award (ECF No. 156) is **GRANTED**.  An order consistent with this Opinion will be entered.

January 31, 2024

*/s/ Karen M. Williams*
KAREN M. WILLIAMS
U.S. DISTRICT COURT JUDGE